NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HASSAN REID, | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 05-3838 (JAG) |
| v. | : | |
| | : | OPINION |
| PAUL SCHUSTER, MICHAEL SABO, RENOLDI MARTINEZ, ASSISTANT PROSECUTOR SEANA PAPPAS and PROSECUTOR'S INVESTIGATOR STEVE WEISS, | : | |
| Defendants. | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the unopposed motions for summary judgment by defendants Detective Michael Sabo ("Detective Sabo"), Detective Renoldi Martinez ("Detective Martinez," and, collectively with Detective Sabo, the "Detective Defendants"), Seana Pappas ("Pappas"), Steven Weitz ("Weitz")[1], and Lieutenant Paul Schuster ("Lieutenant Schuster," and, collectively with Pappas, Weitz, and the Detective Defendants, the "Defendants").[2]  For the

---

[1]  Weitz is incorrectly named in the Amended Complaint as "Steve Weiss."

[2]  On June 14, 2007, Pappas and Weitz filed a motion for summary judgment. (Docket Entry No. 59.) On June 15, 2007, the Detective Defendants filed a separate motion for summary judgment. (Docket Entry No. 62.)  On that same day, Lieutenant Schuster filed a motion for summary judgment, in which he joined in the arguments set forth in the summary judgment motion by the Detective Defendants, and raised additional arguments. (Docket Entry No. 61.) Because the grounds upon which summary judgment shall be granted in favor of the Defendants' favor were raised in each of the aforementioned motions, this Court shall resolve all three

reasons set forth below, Defendants' motions for summary judgment shall be granted.

## I. BACKGROUND

**A.     The Parties**

Plaintiff is an individual who filed the instant Complaint based on facts arising out of his June 9, 2005 arrest and resultant prosecution in the state of New Jersey. Lieutenant Schuster is a police officer in the New Brunswick Police Department who, on June 9, 2005, was in charge of the Anti-Crime Unit. (Detective Defendants' Statement of Undisputed Facts ("SUF") 5; Lieutenant Schuster Training Records, attached as Ex. M[3] to Cert. of William T. Connell ("Connell Cert."); Affidavit in Support of Search Warrant dated June 9, 2005, attached as Ex. N to Connell Cert.) The Detective Defendants were also employed as police officers in the New Brunswick Police Department on the date in question. (SUF 6-7; Detective Sabo Training Records, attached as Ex. O to Connell Cert.; Detective Martinez Training Records, attached as Ex. P to Connell Cert.) Pappas is an Assistant Prosecutor with the Middlesex County Prosecutor's Office (Decl. of Seana Pappas ("Pappas Decl.") ¶ 1), while Weitz is a Sergeant at the Middlesex County Prosecutor's Office (Decl. of Steven Weitz ("Weitz Decl.") ¶ 1).

**B.     The Search Warrant**

On June 9, 2005, Lieutenant Schuster signed an affidavit prepared in support of his application for a search warrant. (SUF 7; Ex. N.) In the affidavit, Lieutenant Schuster stated that he received information from "a past reliable informant" who has "provided information in the

---

motions within this Opinion.

[3] After described in full, all citations to exhibits attached to the Connell Cert. shall thereafter be cited as "Ex. _."

2

past that resulted in arrests and convictions for narcotics violations." (Id.) The affidavit states that the informant had been buying cocaine for several days from a man at Hampton Gardens Apartments ("Hampton Gardens"), located at 17 Hampton Road in New Brunswick, New Jersey. (Id.) The informant described the man selling the cocaine as an African-American male, in his late twenties, who is approximately six feet tall with a heavy build. (SUF 8; Ex. N.) The informant stated that the man was not a resident of Hampton Gardens. (Id.)

According to the informant, the man would arrive at Hampton Gardens during the morning hours in a black 1986 Ford Bronco bearing New Jersey license plate number RRH-75W (the "1986 Ford Bronco"), "with a supply of cocaine to sell and a handgun."[4] (Id.) The informant described the driver of the 1986 Ford Bronco as an African-American female, in her twenties, with a light complexion and a medium build. (Id.) After searching the motor vehicle records, the affidavit states, Lieutenant Schuster discovered that the 1986 Ford Bronco described by the informant was registered to Annie Archer, who lived at 1000 Oak Tree Drive, Apartment H-3, in North Brunswick, New Jersey. (SUF 11; Ex. N.) The record also indicated that Annie Archer was older than the woman described by the informant, so Lieutenant Schuster concluded that Annie Archer may be the mother of the woman described by the informant. (Id.)

The informant related to Lieutenant Schuster that the suspect sold cocaine in either a ground apartment or the hallways of Building A, in the rear of Hampton Gardens. (SUF 9; Ex. N.) The man did not leave the drugs in the ground apartment because the occupants were "heavy cocaine users." (Id.) The informant believed that the woman carried the contraband, since the

---

[4] The affidavit also states that "[t]he informant advised that the man makes no secret that he has the gun[,] showing it often." (SUF 8; Ex. N.)

informant observed the man and the woman appear to transfer something when the man was dropped off at Hampton Gardens.  (Id.)

Lieutenant Schuster asked the informant to make a controlled purchase of cocaine from the man at Hampton Gardens.  (SUF 10; Ex. N.)  The informant was searched for contraband prior to the controlled purchase, and was then provided with cash to make the purchase.  (Id.)  The informant was dropped off near Hampton Gardens, and was observed entering the main entrance of Building A and descending a set of stairs to the bottom floor.  (Id.)  Several minutes later, the informant rejoined Lieutenant Schuster and turned over a quantity of cocaine, which he said he had purchased from the man he had described earlier.  (Id.)  The informant advised Lieutenant Schuster that the man had exited the ground floor apartment carrying a bag of cocaine packets and a pistol in his waist.  (Id.)  The affidavit states that the cocaine purchased by the informant was "field tested and reacted positive for cocaine."  (Id.)  The affidavit also notes that the quantity of cocaine purchased by the informant was consistent with the amount of money provided to the informant.  (Id.)

On June 9, 2005, Assistant Prosecutor Christopher L. Kuberiet, from the Middlesex County Prosecutor's Office, reviewed and approved the Affidavit for Search Warrant prepared by Lieutenant Schuster.  (SUF 11; Search Warrant Approval Form dated June 9, 2005, attached as Ex. R to Connell Cert.)  That same day, Lieutenant Schuster applied for a warrant to search the 1986 Ford Bronco, as well as the man and the woman described by the informant, for cocaine and related paraphernalia.  (SUF 11; Ex. N; Search Warrant dated June 9, 2005, attached as Ex. S to Connell Cert.)

Lieutenant Schuster executed the affidavit in the presence of Judge Gordon.  (SUF 11-12;

Ex. N.)  In the affidavit, Lieutenant Schuster advised that he intended to stop the 1986 Ford Bronco upon its arrival at Hampton Gardens, since the man and the woman were not residents there and did not leave cocaine at the complex.  (SUF 12; Ex. N.)

Judge Gordon approved of and signed the search warrant on June 9, 2005, at 10:26 a.m. (SUF 12; Ex. S.)  The warrant states that the man and the woman were suspected of being in possession of and trafficking controlled dangerous substances, in violation of N.J. STAT. ANN. §§ 2C:35-10 and 2C:35-5.  (SUF 13; Ex. S.)  The warrant authorized police officers to enter the 1986 Ford Bronco without first identifying themselves or stating their purpose.  (Id.)  The warrant stipulated that it must be executed within ten days of June 9, 2005, between the hours of 8:00 a.m. and midnight.  (Id.)  Plaintiff admits that he was unaware that an affidavit was prepared by Lieutenant Schuster and reviewed by the prosecutor's office and by a judge prior to the warrant's execution.  (SUF 13; Selected Portions of Transcript from Deposition of Plaintiff, attached as Ex. Q to  Connell Cert., at T79:1-6.)[5]

**C.     The Search**

The same day that the warrant was issued, three unmarked units transporting Lieutenant Schuster, Detective Sabo, Detective Martinez, Officer Anthony Abode ("Officer Abode"), and members of the Middlesex County Prosecutor's Office Narcotic Task Force, set up surveillance at Hampton Gardens.  (SUF 13-14; Supplemental Investigation Report of Lieutenant Schuster dated June 9, 2005, attached as Ex. T to Connell Cert.)  At approximately 12:30 p.m., the 1986 Ford Bronco was observed arriving at Hampton Gardens.  (SUF 14; Ex. T.)  The 1986 Ford Bronco was driven by a woman that matched the description in the warrant, who was later

---

[5] The abbreviation "T" references a specific page and line of a deposition transcript.

identified as Latoya Archer ("Archer").  (Id.)  The front passenger seat was in a reclined position, and the officers could barely see the passenger sitting in the seat.  (SUF 15; Ex. T.)

The 1986 Ford Bronco drove around Hampton Gardens into the rear parking lot, with Detectives Sabo and Martinez, as well as other officers, following behind.  (SUF 15; Ex. T.)  Lieutenant Schuster and Officer Abode entered the parking lot through the exit driveway, at the same time that the 1986 Ford Bronco pulled in front of Building A.  (Id.)  Lieutenant Schuster observed Plaintiff looking directly at the unmarked police vehicles, and then speaking to Archer.  (Id.)  However, the two unmarked police vehicles blocked any means for the 1986 Ford Bronco to flee.  (Id.)

The officers exited their unmarked vehicles with their badges prominently displayed on chains hanging around their necks.  (Id.)  The officers approached the 1986 Ford Bronco and loudly instructed Plaintiff to show his hands, which at the time were on his lap and below window level.  (SUF 15; Ex. T; Ex. Q at T142:4-7.)  When Plaintiff did not comply immediately with this directive, Officer Abode removed Plaintiff from the passenger side of the vehicle and, with the assistance of other officers, handcuffed him.  (SUF 16; Ex. T.)  Archer remained in the driver's seat, and two young children sat in the backseat of the car.  (Id.)

When Lieutenant Schuster looked into the passenger side of the 1986 Ford Bronco, he observed a handgun lying in plain view on the floor of the car.  (Id.)  The weapon, which was fully loaded with five rounds of .38 caliber ammunition, was recovered and secured.  (Id.)

After Plaintiff and Archer were secured, they were advised of the search warrant.  (Id.)  A search of Plaintiff's person, performed incident to the arrest, revealed a plastic bag that held two plastic bags containing crack cocaine.  (SUF 17; Ex. T; Ex. U at T7:14-18; Evidence Receipt

received June 15, 2005, attached as Ex. V to Connell Cert.; Laboratory Information Management System Evidence Submission Review dated June 14, 2005, attached as Ex. W to Connell Cert.; Certified Laboratory Report dated June 30, 2005, attached as Ex. X to Connell Cert.; Vehicle/Property Description Report dated June 9, 2005, attached as Ex. Y to Connell Cert.)  The cocaine was estimated to weigh approximately nine or ten grams, and had an estimated street value of $1,000.  (SUF 17; Ex. T.)

Members of Plaintiff's family took custody of the two children, and the 1986 Ford Bronco was searched.  (SUF 16; Ex. T.)  No contraband was found in the car.  (Ex. T.)  Plaintiff requested to speak to Lieutenant Schuster, who responded by advising Plaintiff of his Miranda rights in the presence of Officer Abode.  (SUF 17; Ex. T.)  Plaintiff then admitted to Lieutenant Schuster that the gun and the cocaine were his, and that Archer had no knowledge of these items.  (Id.)  Plaintiff also stated that the gun had been in his waist, and that he dropped it to the floor of the 1986 Ford Bronco when the officers approached.  (Id.)

Plaintiff and Archer were transported to police headquarters, where Plaintiff signed a Miranda card acknowledging that he had been advised of and understood his right to remain silent.  (SUF 18; Ex. T; Miranda warnings card dated June 9, 2005, attached as Ex. Z to Connell Cert.)  After signing the card, Plaintiff voluntarily gave a recorded statement to Detective Chris Plowucha ("Detective Plowucha"), admitting to possessing the gun and the cocaine.[6]  (SUF 18; Ex. T; Transcript of Voluntary Statement of Plaintiff for Case No. 2005-24462, attached as Ex. AA to Connell Cert.)  He also admitted that he intended to sell the cocaine.  (SUF 18; Ex. AA.)

---

[6] Before Plaintiff gave his statement, Detective Plowucha informed Plaintiff of his Miranda rights again, during the recording.  (SUF 18; Ex. AA.)

7

**D.     The State Criminal Proceeding**

In the July 2005 term, the Middlesex County Grand Jury returned indictments against Plaintiff and Archer for the following charges: (1) possession of CDS; (2) possession of cocaine with intent to distribute; (3) conspiracy; (4) unlawful possession of a weapon; (5) possession of a firearm while engaged in CDS-related activity; (6) possession of a weapon for unlawful purposes; and (7) two counts of endangering the welfare of the two children present in the vehicle at the time of the arrest.  (SUF 20-21; Indictment No. 05-08-01107, attached as Ex. GG to Connell Cert.)

On September 19, 2005, in the Superior Court of New Jersey, Law Division for Middlesex County, Plaintiff pled guilty before Judge Deborah J. Venezia, J.S.C. to possession of cocaine with the intent to distribute.  (SUF 21; Transcript of Plea Proceedings dated September 19, 2005, attached as Ex. U to Connell Cert., at T2:25, T3:1-4.)  On that same date, Plaintiff also signed a Plea Form, in which he expressly acknowledged that he was voluntarily pleading guilty to this charge.  (SUF 21; Plea Form dated September 19, 2005, attached as Ex. HH to Connell Cert.)  Plaintiff acknowledged that he understood that by pleading guilty, he was eligible to receive a sentence of up to five years in prison.  (SUF 21; Ex. U at T3:23-25, T4:1.)  Plaintiff stated in his guilty plea that no one had forced him to plead guilty, and that he was pleading guilty of his own free will.  (SUF 22; Ex. U at T3:14-18.)  Plaintiff affirmed that he was not pleading guilty to get a bail reduction, and stated, "I am pleading guilty because, in fact, I am guilty."  (SUF 22; Ex. U at T5:11-15.)

Plaintiff's bail was reduced to $35,000, without a ten percent option.  (SUF 22; Ex. U at T9:22-25, T10:1-5.)  Plaintiff was ordered to appear before Judge Venezia on January 9, 2006 for

8

sentencing. (SUF 22; Transcript of Sentence dated March 27, 2006, attached as Ex. JJ to Connell Cert., at T3:2-9.) However, he failed to appear in court on that day. (Id.) On February 17, 2006, Plaintiff was arrested in South Brunswick, New Jersey on unrelated charges. (SUF 22; Ex. Q at T36:11-25, T37:1-10; Ex. JJ at T5:4-8.) Plaintiff was arrested, in part, because of an outstanding bench warrant based on his failure to appear in court on January 9, 2006. (SUF 22; Ex. JJ at T5:4-8.)

On March 27, 2006, at his sentencing hearing for the drug possession offense, Plaintiff's attorney requested that the court accept the plea agreement entered into by Plaintiff on September 19, 2005. The court gave Plaintiff an opportunity to speak, which he declined. (Id.) Plaintiff was sentenced to five years in prison without the possibility of parole; was fined $1,205; and lost his driving privileges for six months. (SUF 23; Ex. JJ at T5:12-24.)

### E.     Appeal of the State Court Conviction

On April 13, 2006, Plaintiff filed an appeal of his criminal conviction in the Superior Court of New Jersey, Appellate Division. (SUF 23; Plaintiff's Appeal filing, attached as Ex. KK to the Connell Cert.) On March 8, 2007, the Appellate Division denied Plaintiff's appeal, and affirmed his criminal conviction. (SUF 24; Appellate Division Order dated March 8, 2007, attached as Ex. LL to Connell Cert.)[7]

### F.     The Instant Federal Civil Proceeding

On September 26, 2005, Plaintiff filed a complaint (the "Complaint"), in which he alleged that his Fourth, Fifth and Eighth Amendment rights were violated when Lieutenant

---

[7] The parties have not submitted any information referencing an appeal of the Appellate Division's decision.

9

Schuster and the Detective Defendants "execut[ed] an illegal search under an illegal and palpably racist search warrant and by colluding to detain me under an oppressively excessive bail." (Compl. 5.) On April 28, 2006, after Lieutenant Schuster and the Detective Defendants had filed Answers to the Complaint, Plaintiff filed an amended complaint (the "Amended Complaint").[8] In the Amended Complaint, Plaintiff added Pappas and Weitz as additional defendants. The Amended Complaint also added the following causes of action: (1) conspiracy to plant evidence in violation of Plaintiff's constitutional rights; (2) conspiracy to effectuate the false arrest and false imprisonment of Plaintiff in violation of his constitutional rights; (3) conspiracy to maliciously prosecute Plaintiff; (4) conspiracy to cause negligent infliction of emotional distress; and (5) conspiracy to cause intentional infliction of emotional distress. (Amended Compl. 1-10.) Defendants thereafter filed Answers to the Amended Complaint.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ." Marino v.

---

[8] Plaintiff did not receive leave from this Court to file the Amended Complaint. Nevertheless, in a letter order dated May 12, 2006, Judge Arleo entered an Order stating that the Amended Complaint would be recognized as filed. (Docket Entry No. 32.)

Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).

"[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).[9]

---

[9] Plaintiff did not file any opposition papers in response to any of Defendants' motions for summary judgment. This Court shall accept as true all facts raised in the two Statements of Undisputed Facts, submitted with the motion by the Detective Defendants and the motion by Pappas and Weitz, pursuant to L. CIV. R. 56.1, provided that the facts are supported by evidence in the record. See Purdy v. Pa. Public Utility Comm'n, 2007 WL 3237458, at *1 (M.D. Pa. Oct. 30, 2007); Virgin Records, 2007 WL 4264543, at *3.

## III. ANALYSIS

### A. Section 1983 Claims

This Court, after liberally construing both the Complaint and the Amended Complaint, has identified four constitutional violations alleged by Plaintiff in his Section 1983 claim. First, Plaintiff contends that he was unlawfully arrested because Defendants planted evidence. (Amended Compl. 5-7.) Second, Plaintiff argues that he was subjected to an unlawful search and seizure when police officers searched the 1986 Ford Bronco. (Compl. 6.) Third, Plaintiff asserts a malicious prosecution claim against Defendants. (Amended Compl. 8.) Fourth, the Complaint alleges that Defendants unlawfully imprisoned Plaintiff "under an oppressively excessive bail," in violation of the Eighth Amendment. (Compl. 5; Amended Compl. 5-6.)

In Heck v. Humphrey, the Supreme Court held that,

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [Section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .

512 U.S. 477, 486-87 (1994) (emphasis in original). The Court explained that, when analyzing a prisoner's Section 1983 claims, district courts "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Id. at 487. Any such damages claim "bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under [Section] 1983." Id. at 487 (emphasis in original).

Absent a showing that his conviction has been reversed, expunged, declared invalid by

the state court, or called into question in a writ of habeas corpus, Plaintiff has no cause of action under Section 1983 for malicious prosecution. Id.; Nicholas v. Heffner, 228 Fed. App'x 139, 141 (3d Cir. 2007). A judgment in favor of Plaintiff on this claim would unquestionably invalidate the otherwise valid state court conviction. Nicholas, 228 Fed. App'x at 141. Plaintiff's guilty plea functions as a conviction which, if not overturned, bars his Section 1983 claim. See Gilles v. Davis, 427 F.3d 197, 209 n.8 (3d Cir. 2005) (holding that a guilty plea is sufficient to bar a subsequent Section 1983 claim).

Likewise, Plaintiff cannot sustain a Section 1983 false arrest claim based on the alleged planting of evidence. The weapon and contraband found in the 1986 Ford Bronco are directly connected to the confession elicited from, and the guilty plea entered into by, Plaintiff. If this Court found that Defendants planted this evidence, the basis of Plaintiff's state court conviction would in essence be eroded completely. See Walker v. Fisher, 2002 WL 1497284, at *1 (E.D. Pa. July 12, 2002) (holding that plaintiff's Section 1983 claim is not cognizable because "[a] judgment for plaintiff predicated on a determination that he was denied a fair trial and convicted on the basis of tainted evidence would necessarily impugn the validity of his state court conviction").

Judgment should also be entered in favor of Defendants on Plaintiff's Section 1983 excessive bail claim. Although the Third Circuit has not expressly ruled on this issue, the Tenth Circuit has upheld the dismissal of an excessive bail claim, pursuant to Heck. See Pettit v. Whetsel, No. 99-6107, 1999 WL 586998, at *2 (10th Cir. Aug. 5, 1999) (holding that plaintiff's contention that he possessed less grams of cocaine than the quantity relied upon to calculate his bond constitutes a denial of the charges against him, and therefore directly contravenes the

13

doctrine set forth in Heck). The excessive bail claim relies on the allegation that Defendants conspired to plant evidence. As stated above, Plaintiff cannot successfully litigate this claim without refuting the validity of the charges against which he was convicted. Plaintiff's conviction makes it impossible for him to overcome the obstacle presented by the Heck doctrine.[10]

However, the Supreme Court's holding in Heck does not quash Plaintiff's illegal search and seizure allegation. A claim contesting the validity of a search warrant does not necessarily invalidate a plaintiff's conviction. Heck, 512 U.S. at 487 n.7 ("Because of doctrines like independent source and inevitable discovery, . . . and especially harmless error, . . . such a Section 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful") (emphasis in original); Jackman v. Smith, 190 Fed. App'x 108, 109-10 (3d Cir. 2006). This Court shall not resolve this specific Section 1983 allegation in favor of Defendants based solely on the doctrine articulated by the Supreme Court in Heck.

**B.     Qualified Immunity**

Plaintiff's remaining Section 1983 claim, as well as any federal claim he may have intended to raise, pursuant to 42 U.S.C. § 1985, fail as a matter of law against the qualified immunity defense raised by Defendants. "The doctrine of qualified immunity 'hold[s] that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[10] Although the Supreme Court has not expressly applied its holding in Heck to a Section 1985 claim, courts have expanded its application to such claims. See Zhai v. Cedar Grove Municipality, 183 Fed. App'x 253, 255 (3d Cir. 2006); Bansal v. Russ, 513 F. Supp. 2d 264, 277 n.7 (E.D. Pa. 2007). Accordingly, any Section 1985 claims Plaintiff may have intended to bring for malicious prosecution, false arrest, or excessive bail are likewise barred by Heck.

constitutional rights of which a reasonable person would have known.'" Doe v. County of Centre, Penn., 242 F.3d 437, 453-54 (3d Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)). To determine whether qualified immunity is appropriate, courts use an objective standard to determine whether the officer's "conduct was required[,] as it would be seen by an ordinary reasonable police officer [that] would view the conduct." Venuti v. City of Elizabeth, No. 03-700, 2006 WL 2850606, at *8 (D.N.J. Oct. 3, 2006). The determination of whether a defendant is entitled to qualified immunity is a question of law. Id.

Courts employ a two-step analysis to determine the applicability of the qualified immunity defense. "First, a court must determine whether, taking the facts in the light most favorable to the plaintiff, the defendant official's conduct violated a constitutional right at all." Saucier v. Katz, 533 U.S. 194, 201 (2001); Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. However, if the plaintiff shows evidence of a constitutional violation, "the court must then determine whether that right was clearly established at the time of the alleged violation, given the specific facts of the case." Johnson v. Anhorn, 416 F. Supp. 2d 338, 381 (E.D. Pa. 2006) (citing Saucier, 533 U.S. at 201).

      1.     Section 1983 claim

As explained earlier, the only Section 1983 claim remaining is the allegation that Defendants violated Plaintiff's Fourth Amendment rights. However, the evidence does not support a finding that Defendants violated Plaintiff's constitutional right to be free from unreasonable searches and seizures.

Plaintiff fails to point to evidence supporting his contention that the 1986 Ford Bronco was searched pursuant to an unlawful search warrant. The Fourth Amendment requires all warrants to describe with particularity the place to be searched and the persons or things to be seized. Maryland v. Garrison, 480 U.S. 79, 84 (1987). "The manifest purpose of this particularity requirement was to prevent general searches." Id. "A warrant meets the particularity requirement 'if the description is such that the officer with the search warrant can, with reasonable effort, ascertain and identify the place intended.'" United States v. Slotcavage, No. 97-00225-01, 1997 WL 431002, at *5 (E.D. Pa. July 16, 1997) (quoting Steele v. United States, 267 U.S. 498, 503 (1925)). "Technical errors in the warrant and affidavit, including erroneous addresses, will therefore not necessarily invalidate a warrant and subsequent search." Id.

Plaintiff alleges that the description of the suspect and the vehicle was written on the warrant after his arrest. Plaintiff offers no evidence defending this assertion. Instead, Plaintiff attempts to defend this allegation by explaining during his deposition that the warrant lists Archer's residence as "H3," when in fact she lives at "K4." (Exh. Q, T73:4-18.) Plaintiff goes on to state that Archer informed officers at the police station that her address was "H3," and that the inclusion of this address in the warrant indicates that facts were added to the warrant subsequent to his arrest to substantiate a finding of probable cause.

However, assuming *arguendo* that the warrant listed Archer's wrong address, Plaintiff still cannot succeed on his challenge to the validity of the search warrant. The error in Archer's address does not affect the particularity with which the warrant described the location of the search – the 1986 Ford Bronco – and the drugs and weapons to be seized. Archer's address also

16

did not impact the officers' ability to identify the vehicle based on the description provided in the warrant. Plaintiff has not shown that the warrant lacked particularity. As a result, judgment shall be entered in favor of Defendants with respect to Plaintiff's Section 1983 claim for unreasonable search and seizure.[11]

  2.  Section 1985 claim

To the extent that Plaintiff intended to raise his Fourth Amendment claim, pursuant to 42 U.S.C. § 1985, the doctrine of qualified immunity likewise bars this cause of action. To state a claim under Section 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."[12] Cranbury Brook Farms

---

[11] The Complaint also alleges that Defendants participated in a conspiracy to violate Plaintiff's constitutional rights. To demonstrate a conspiracy under Section 1983, plaintiff must prove that two or more conspirators agreed to deprive the plaintiff of his constitutional rights under color of state law. Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds*, United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Penn., 316 F.3d 392, 400 (3d Cir. 2003). "In order to state a cause of action of conspiracy under Section 1983, a constitutional violation must occur." Green v. City of Patterson, 971 F. Supp. 891, 909 (D.N.J. 1997). As discussed above, Defendants are entitled to qualified immunity with respect to the Section 1983 claim for conspiracy to violate Plaintiff's Fourth Amendment rights, as Plaintiff is unable to prove a constitutional violation. Furthermore, Section III, A of this Opinion, *supra*, explains that Plaintiff also cannot maintain a conspiracy claim based on the allegations of malicious prosecution, false arrest, or unreasonable bail, without first showing that his state court conviction has been overturned.

[12] The Complaint raises conspiracy allegations without specifically referencing Section 1985, much less the specific subsection of Section 1985 applicable to the conspiracy claim. Section 1985(1) prohibits preventing an officer of the United States from performing official duties, and Section 1985(2) prohibits the intimidation of any party, witness, or juror of any court of the United States. Section 1985(3), the only subsection that is logically applicable to this case, provides the following:

v. Twp. of Cranbury, 226 Fed. App'x 92, 95 n.4 (3d Cir. 2007) (citing Griffin v. Beckinridge, 403 U.S. 88, 102-03 (1971)).

The evidence adduced here does not allow a reasonable factfinder to conclude that Defendants engaged in a conspiracy to deprive Plaintiff of his constitutional rights. Plaintiff was arrested after illegal narcotics and a weapon were seized from the 1986 Ford Bronco, which was searched pursuant to a valid warrant. Plaintiff has not presented any material evidence showing that the warrant was unlawfully secured. Without such evidence, Plaintiff cannot maintain that Defendants conspired to perform an illegal search of the 1986 Ford Bronco.

---

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

**C.     State-Law Tort Claims**

The Complaint raises three plausible state-law claims: malicious prosecution, negligent infliction of emotional distress, and intentional infliction of emotional distress. Defendants' immunity, pursuant to the New Jersey Tort Claims Act ("NJTCA"), inhibits Plaintiff from succeeding on any of these claims.

The NJTCA exempts all public employees from tort liability if they are acting in good faith in the execution or enforcement of any law. N.J. STAT. ANN. § 59:3-3. "Good faith immunity under section 3-3 has two alternate components." Alston v. City of Camden, 773 A.2d 693, 703 (N.J. 2001) (quoting Fielder v. Stonack, 661 A.2d 231, 246 (N.J. 1995)). "A public employee either must demonstrate 'objective reasonableness' or that he behaved with 'subjective good faith.'" Id. (quoting Fielder, 661 A.2d at 246).

Plaintiff has not set forth any evidence showing that Defendants planted evidence, unlawfully obtained a warrant, set bail at an unreasonable amount, or engaged in any behavior that could not be viewed as an objectively reasonable execution or enforcement of the law. As explained above, the inclusion of Archer's wrong address on the warrant does not show, or even imply, that the warrant was fraudulently procured.

Upon conducting the search of the 1986 Ford Bronco, the Detective Defendants found a weapon and contraband, which Plaintiff later confessed were his possessions. Plaintiff willingly pled guilty to the possession of cocaine with the intent to distribute. In accordance with the plea agreement, Plaintiff's bail was reduced to $35,000, without a ten percent option. After his attorney requested that the state court accept the plea agreement, that court provided Plaintiff with an opportunity to speak, which he declined.

The record describes the execution of the search warrant, as well as the arrest and prosecution of Plaintiff, as reasonable, good faith efforts by Defendants to enforce New Jersey's criminal laws. Defendants should therefore be exempt from liability for Plaintiff's state law claims, pursuant to the NJTCA.[13]

## IV.  CONCLUSION

For the reasons stated above, the three motions for summary judgment filed by the Defendants shall be granted.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: March 18, 2008

---

[13]  Pappas and Weitz do not argue for immunity from tort liability, as afforded by the NJTCA, but instead posit that Plaintiff did not properly file a notice of claim, pursuant to the NJTCA. The NJTCA requires a plaintiff to file a notice of claim against a public entity within ninety days after the cause of action accrues. N.J. STAT. ANN. § 59:8-8. For purposes of the NJTCA, a cause of action accrues when the alleged injury occurs. Muhammad v. N.J. Dept. of Corr., No. 05-5001, 2007 WL 2318480, at *4 (D.N.J. Aug. 9, 2007). The New Jersey Supreme Court held in Velez v. City of Jersey City that this notice requirement also applies to intentional tort claims. 850 A.2d 1238, 1244 (N.J. 2004). However, the New Jersey Supreme Court also "noted that its holding applied prospectively to all similar causes of action accruing after the date of this opinion," which was issued on June 29, 2004. Garcia v. New Jersey, No. 06-435, 2006 WL 3490348, at *5 (D.N.J. Dec. 1, 2006) (citing Velez, 850 A.2d at 1246).
    There exist no facts in the record indicating that Plaintiff has filed a notice of claim, or requested an extension of time to file a notice of claim. Therefore, this Court may also enter judgment in favor of Pappas and Weitz based on Plaintiff's failure to file a notice of claim.